**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

                                                      Criminal No. 20-233(9) (JRT/DTS)
                                    Plaintiff,

v.

                                                  **MEMORANDUM OPINION AND ORDER**
ABDOU DIALLO,                                          **ADOPTING REPORT &**
                                                           **RECOMMENDATION**
                                    Defendant.

Harry Jacobs, Joseph H. Thompson, Melinda A. Williams, **UNITED STATES
ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN
55415 for plaintiff.

Andrew H. Mohring, **GOETZ AND ECKLAND P.A.**, 615 First Avenue
Northeast, Suite 425, Minneapolis, MN 55413; Kelly J. Keegan, **BRANDT
CRIMINAL DEFENSE**, 2150 Third Avenue North Suite 210, Anoka, MN 55303,
for defendant.

Defendant Abdou Diallo was indicted on conspiracy to commit wire fraud and on

four additional counts of wire fraud in relation to an alleged nationwide fraudulent

magazine sales scheme.  In September 2019, a search warrant was issued to search

Diallo's email account.  The search warrant affidavit connected Diallo with the scheme

through an email from Brian Cox to Diallo and others, attempting to sell a "lead list" with

potential victims.  A search of Cox's emails also uncovered communications between

Diallo and Cox dating back to 2015.  Diallo filed a Motion to Suppress the evidence

obtained through the execution of the first warrant and the evidence obtained through a

subsequent search warrant based on the evidence collected from the first. Magistrate

Judge David Schultz recommended that the motion be denied.

The Court finds that the first warrant was supported by probable cause but that it

failed to comply with the Fourth Amendment's particularity requirement, rendering it

overbroad and unconstitutional. Nevertheless, the Court finds that because the *Leon*

good-faith exception to the exclusionary rule applies, the evidence obtained through the

first warrant—and therefore also the second— need not be suppressed. Thus, the Court

will adopt the Magistrate Judge's recommendation and deny the Motion to Suppress.

**BACKGROUND**

**I.    FACTS**

Defendant does not object to the facts as described in the Report &

Recommendation ("R&R") and the Court will adopt them in full and provide only an

abbreviated version here. (*See generally* R. & R. at 1–5, Apr. 4, 2023, Docket No. 276.) In

September 2019, Magistrate Judge Tony Leung issued a federal search warrant to search

the contents of Abdou Diallo's email address. (Def.'s Resp. to Mot. Suppress, Ex. A

("Warrant") at 1, Jan. 13, 2023, Docket No. 257-1.) The warrant was issued based on a

43-page affidavit in support of the warrant by Postal Inspector John Western. (*See

generally id.*) The affidavit described a nationwide fraudulent magazine sales scheme,

which the R&R explains in great detail. (*See* R. & R. at 1–4.) In the course of prosecuting

cases against individuals involved in the scheme, the United States obtained the

cooperation of Individual A, the owner of Your Magazine Service. (R. & R. at 3.) Individual

A communicated with Brian Cox, who had sold him "lead lists"—lists with potential fraud victims including their names, phone numbers, and other contact information.  (*Id.*)  In July 2019, Individual A offered Cox a fake lead list with the contact information for undercover Postal Inspectors.  (*Id.* at 3–4.)  Cox told Individual A that he had "six guys that religiously buy leads from me every week," and agreed to distribute the list and split the profits with Individual A.  (*Id.* at 4.)  On July 16, 2019, Cox emailed Diallo and others, offering the lead list obtained from Individual A.  (*Id.*)  Soon after, Undercover Postal Inspectors began receiving calls from magazine companies.  (*Id.*)  The United States then executed a warrant to search Cox's email.  (*Id.*)

**A.  Diallo's Involvement with Cox**

A few minutes after receiving Cox's email, Diallo replied requesting that Cox send a sample so that he can "see the quality of it" and asking to "try the 50 names."  (Warrant ¶ 96.)  A subsequent search of Cox's email uncovered other communications between Diallo and Cox dating back to 2015.  (R. & R. at 4–5; Warrant ¶¶ 92–95.)

In May 2015, Cox emailed Diallo a list including 93 individual records that appeared to be handwritten.  (Warrant ¶ 92.)  The list included contact and credit card information that the investigators believed were used to "build trust and trick individuals into believing that a salesperson is calling from his or her existing magazine company."  (*Id.*)  The warrant affidavit alleged that Cox similarly emailed Diallo potential lead lists in July 2015 and December 2018.  (*Id.* ¶¶ 93, 95.)

In November 2015, Diallo and Cox had an exchange where Diallo sent Cox a "script" and wrote "[h]ere is the script you asked for." (*Id.* ¶ 94.) The next day, Cox sent an email to Diallo saying, "this is a different script than I had on file. I attached script I had on file" and attached a different script. (*Id.*) Cox's version of the script matched the pattern of other scripts used in the scheme. (*Id.*) Diallo responded saying, "the new script is the clean version the old script caused too many chargebacks." (*Id.*)

Finally, on February 7, 2019, Cox sent Diallo an email with invoices, one of which described the charges as for "HW [handwrite lead list] at 200 records - $4.25 = $850 + PayPal fee." (*Id.* ¶ 95) Diallo replied saying "Thank you will send payment now." (*Id.*)

After executing the warrant based on this information, investigators used evidence obtained from the search to request and execute a second search warrant. (R. & R. at 16–17.)

## II.    PROCEDURAL HISTORY

Diallo was indicted on one count of conspiracy to commit wire fraud and four counts of wire fraud. (*See generally* Indictment, Oct. 20, 2020, Docket No. 1). Diallo filed a Motion to Suppress Evidence Obtained as a Result of Search and Seizure, arguing that the search warrant for his email account lacked probable cause because the warrant application did not establish a nexus between the email account and criminal activity. (*See generally* Mot. Suppress Evid., Oct. 21, 2022, Docket No. 233.) Diallo also challenges the second search warrant as the fruit of the poisonous tree based on the alleged issues

in the first search warrant. (*Id.*) The Magistrate Judge reviewed the motion and recommended that it be denied. (R. & R. at 17.)

The Magistrate Judge considered Diallo's argument that there was a lack of nexus with criminal activity and reasoned that although each interaction between Cox and Diallo might appear innocuous on their own, when considered together, the conduct indicated criminal activity. (R. & R. at 7.) The Magistrate Judge also rejected Diallo's argument that the warrant was based on stale information because although there is a multiple-year gap between some of the communications, the alleged scheme dated back to 2011. (*Id.* at 9– 10.) The Magistrate Judge then concluded that taken together—and given the ongoing nature of the scheme being investigated—the warrant was not stale. (*Id.* at 10.) The Magistrate Judge also rejected Diallo's argument that the search warrant was overbroad and alternatively recommended that the good-faith exception applies. (*Id.* at 13–16.)

**DISCUSSION**

**I.   STANDARD OF REVIEW**

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections

which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (internal quotation marks and citation omitted).

## II.   ANALYSIS

The Court will review Defendant's Motion to Suppress de novo. *See* LR 72.1(a)(3)(A) (identifying motions to suppress evidence as dispositive pretrial motions in criminal cases). Diallo raises four objections to the R&R. First, Diallo challenges the probable cause determination by the Magistrate Judge as not sufficiently specific to him and lacking a nexus to criminal activity. Second, Diallo objects to the Magistrate Judge's rejection of his staleness argument. Third, Diallo argues that a recent decision by the Court, on nearly identical facts, supports a finding that the search warrant was overbroad. Fourth, Diallo objects to application of the good faith exception.

**B.  Probable Cause**

The Fourth Amendment requires that a search warrant be issued only if it is supported by probable cause.  U.S. Const. amend. IV.  In determining whether probable cause exists, the search warrant must demonstrate that given all the circumstances set forth in the affidavit, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  This requires the issuing judge to look at the totality of the circumstances.  *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998).  When a search warrant is based solely on an affidavit, courts may only consider "that information which is found within the four corners of the affidavit" to determine the existence of probable cause.  *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citation omitted).  Although the Court reviews the R&R de novo, the Court must afford great deference to the probable cause determination of the judge who issued the warrant and should resolve "doubtful or marginal cases" in favor of the warrant's validity.  *United States v. Butler*, 594 F. 3d 955, 962 (8th Cir. 2010) (citing *Gates*, 462 U.S. at 236).  The Court must uphold the probable cause determination if the issuing judge had a substantial basis for the initial probable cause finding.  *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).

Diallo's objections suggest that the Magistrate Judge improperly considered facts unrelated to Diallo in its determination and that the totality of circumstances specific to him do not support a nexus with criminal conduct.  In particular, Diallo urges that the November 10, 2015 email suggests that Diallo "renounced the script."  (Def.'s Objs. R. &

R. at 3, Apr. 27, 2023, Docket No. 282.)  However, the Court views the Magistrate Judge's "potentially innocuous" characterization of each email exchange as charitable, as the exchange plainly suggests involvement with the alleged fraudulent scheme.

Although the issuing judge must focus on whether specific evidence incriminates the subject of the warrant, they do not need to ignore the non-suspect-specific facts alleged in the warrant affidavit.  When the investigators obtained the November 2015 email exchange, they already knew of a potential widespread scheme involving fraudulent magazine telemarketing.  They knew that companies used extensive scripts to trick individuals into making large lump sum payments.  And soon after they provided Cox with the fake leads, Diallo was one of the first to respond, requesting a sample.  With these facts in mind, an email exchange between Diallo and Cox where they discuss versions of a script, and where Diallo appears to have improved on an "old script" because it "caused to many chargebacks," supports a finding of probable cause that Diallo was involved in the fraudulent scheme.  It may not be sufficient for a jury to find Diallo guilty, but that is not the probable cause standard.  *See Gates*, 462 U.S. at 243 n.13 ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause[.]").

In fact, given the other communications uncovered between Cox and Diallo, even if this particular exchange did not exist, there is enough evidence for the Court to find

that the issuing judge had a substantial basis for approving the warrant.  Although Diallo

makes much of the fact that some of the email communications from Cox to Diallo went

unanswered, that is not dispositive here where the overall evidence suggests that Cox

was involved in fraudulent activity as the lead broker and Diallo paid him for a list at least

once.  Therefore, the Court finds that the totality of circumstances supports a finding of

probable cause.

## C.  Staleness

Diallo's staleness objection depends primarily on the Court agreeing to disregard

the November 2015 exchange with Cox.  But as the Magistrate Judge properly stated,

there is "no fixed formula" for determining when information becomes stale.  *United

States v. Petruk*, 929 F.3d 952, 960 (8th Cir. 2019) (citation omitted).  Where a crime is of

a continuous nature, the passage of time is less significant.  *Id.*  The Court concludes that

given the allegations of a scheme dating back as far as 2011, and the fact that Diallo

responded to Cox's email in 2019, there is no staleness issue in this case.

## D.  Overbreadth

Diallo argues that the initial warrant was overbroad based on *United States v.

Moulder*, 20-cr-232, 2022 WL 3644893, at *4 (D. Minn. Aug. 24, 2022), in which the Court

found a nearly identical search warrant to violate the Fourth Amendment's particularity

requirement.  In that case, the Court explained that "two-step" warrants under Federal

Rule of Criminal Procedure 41(e)(2) must meet the particularity requirement at each

"step."  *See id.*  The Court concluded that a search warrant request for all email records

from Google, fails the Fourth Amendment particularity requirement and is overbroad. *Id.* The warrant in this case similarly requested all emails from Abdou's email provider, Microsoft Corporation. (*See* Warrant at 48.)[1] The Court concludes that this case presents identical concerns as in *Moulder*, and that based on the same reasoning explained in that case, Step 1 of the warrant here was overbroad. *See Moulder*, 2022 WL 3644893 at *4–6.

## E. *Leon* Good Faith Exception

Nevertheless, as in *Moulder*, the Court also concludes that the good faith exception applies. Even if the Court had found that there was not probable cause to support the warrant, it would nevertheless deny the motion to suppress. Although the ordinary sanction for searches conducted in the absence of probable cause is suppression of the evidence recovered in the illegal search, this exclusionary rule is not applicable "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)). Among other circumstances, an officer does not rely on a warrant in good faith when the affidavit supporting the warrant contained reckless, knowing, or intentionally false statements that misled the issuing judge, or was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quotation marks and citations

_____

[1] Page number refers to the CM/ECF numbering unless otherwise stated.

omitted).  In determining whether the executing officer had an objectively reasonable belief that probable cause existed, the Court considers the totality of the circumstances, including information known to the officer but not presented to the issuing judge.  *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008).  Simply put, the "objectively ascertainable" inquiry is whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances.  *Herring v. United States*, 555 U.S. 135, 145 (2009).

Diallo argues that the good faith exception should not apply because the same affiant also executed the warrant, presented incomplete facts, and omitted information. The Magistrate Judge properly rejected these same arguments, and the Court agrees that Diallo has not made a "substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).  Even if Diallo is correct that the affiant omitted certain information favorable to him, Diallo has not provided evidence that he did so recklessly, knowingly, or intentionally, or that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Fiorito*, 640 F.3d at 345.  Therefore, the Court finds that the good faith exception applies.

Finally, because the good faith exception applies, the Court rejects Diallo's fruit of the poisonous tree argument as to the second search warrant.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

- Diallo's objections [Docket No. 282] to the Report and Recommendation are

    **OVERULLED**.

- The Report and Recommendation [Docket No. 276] is **ADOPTED**

- Diallo's Motion to Suppress Evidence obtained as a result of Search and

    Seizure [Docket No. 233] is **DENIED.**

DATED:  June 5, 2023
at Minneapolis, Minnesota.

_____

JOHN R. TUNHEIM
United States District Judge

-12-